# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUMA BAND OF LUISENO MISSION INDIANS OF THE PAUMA & YUIMA RESERVATION, a/k/a/ PAUMA BAND OF MISSION INDIANS, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, *et al.*,<br><br>Defendants. | Case No. 16-cv-01713-BAS-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 19]** |

On July 1, 2016, Plaintiff Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation ("Pauma") commenced this action against Defendants the State of California; Governor Edmund G. Brown, Jr.; the California Gambling Control Commission; and the State of California Department of Justice, Office of the Attorney General. This action arises out of the Indian Gaming Regulatory Act ("IGRA") and an original form gaming compact executed between Pauma and the State of California. Pauma brings claims against Defendants for violation of the IGRA and for breach of the gaming compact.

Pauma amended its complaint on August 4, 2016, and Defendants now move to dismiss the twenty-first claim of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 19.) Pauma opposes Defendants' motion. (ECF No. 22.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the twenty-first claim of the First Amended Complaint.

## I. BACKGROUND

### A. The 1999 Gaming Compacts

The IGRA, "which was passed by Congress in 1988, provides a framework for 'the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments.' " *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1152 (9th Cir. 2015) (quoting 25 U.S.C. § 2702(1)). The act "provides that a state must negotiate in good faith with its resident Native American tribes to reach compacts concerning casino-style gaming on Native American lands." *Rincon Band of Luiseno Mission Indians of Rincon Reservation v. Schwarzenegger*, 602 F.3d 1019, 1022 (9th Cir. 2010). If the state fails to do so, the IGRA allows a tribe to sue the state in federal court to compel performance of the state's duty to negotiate. 25 U.S.C. § 2710(d)(7).[1] Despite the IGRA's gaming compact framework, "several unresolved conflicts . . . developed

---

[1] California has waived its sovereign immunity in the compact it entered into with Pauma. (*See* 1999 Compact § 9.4, First. Am. Compl. Ex. 1, ECF No. 12-2.) *See also Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1169 (9th Cir. 2015) (holding California "waived its Eleventh Amendment sovereign immunity through an explicit contractual waiver" in its compact with Pauma).

between the State of California and Indian tribes surrounding . . . gaming and, especially, gaming devices in casinos." *Hotel Emps. & Rest. Emps. Int'l Union v. Davis*, 21 Cal. 4th 585, 596 (1999). In response to these conflicts, California voters passed Proposition 5, The Tribal Government Gaming and Economic Self-Sufficiency Act of 1998, "to authorize various forms of gaming in tribal casinos." *See id.* at 589.[2] Shortly after Proposition 5 passed, the State of California entered into negotiations with over sixty Indian tribes in the spring of 1999 to devise a compact to establish Indian gaming under the IGRA. (First Am. Compl. ("FAC") ¶¶ 39–40, ECF No. 12.) Pauma and the State fully executed a form version of the 1999 Compact on May 1, 2000. (Tribal-State Compact Between the State of California and the Pauma Band of Mission Indians ("1999 Pauma Compact"), FAC Ex. 1, ECF No. 12-1.)

The 1999 Compacts allowed signatory tribes to operate a baseline entitlement of gaming devices, while allowing tribes to acquire licenses to operate additional devices through a series of communal draws administered by a trustee. (FAC ¶¶ 46–50.) The total number of licenses available to all tribes was capped based on a license pool formula detailed in Section 4.3.2.2(a)(1) of the 1999 Compacts. (*Id.* ¶ 48.) On March 13, 2001, then Governor of California Gray Davis empowered the California Gambling Control Commission ("CGCC") to assume control over the license pool draws. (*Id.* ¶ 66.) The CGCC interpreted the license pool formula as providing for a smaller number of total licenses than had the previous trustee. (*Id.* ¶¶ 68–71.)

//

//

---

[2] In *Hotel Employees*, the California Supreme Court held that Proposition 5 violated article IV, section 19, subdivision (e) of the California Constitution, which prohibited the legislature from authorizing Nevada-style casinos. 21 Cal. 4th at 594, 615. The following year, California voters passed Proposition 1A, a constitutional amendment allowing the State's governor to negotiate and conclude compacts with Indian tribes for the operation of casinos. *Flynt v. Cal. Gambling Control Comm'n*, 104 Cal. App. 4th 1125, 1128 (2002). Subsequent challenges to the constitutionality of Proposition 1A were unsuccessful. *See id.* at 1145–46.

**B.     Renegotiation of the 1999 Pauma Compact**

Following the reinterpretation of the license pool formula, Pauma entered into negotiations with the State in an attempt to obtain a larger number of licenses than was possible under the new interpretation of the 1999 Compacts. (FAC ¶ 77.) On June 21, 2004, Pauma and the State executed an amendment to the 1999 Pauma Compact ("2004 Amendment") that included increased revenue sharing requirements and operating costs. (*Id.*) However, subsequent litigation between the State and the Cachil Dehe Band of Wintun Indians of the Colusa Indian Community resulted in a finding that the State lacked the authority to interpret the license pool formula. (*Id.* ¶¶ 79–83.) *See also Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 629 F. Supp. 2d 1091, 1108 (E.D. Cal. 2009), *aff'd in part, rev'd in part*, 618 F.3d 1066, 1084–85 (9th Cir. 2010). Following the decision, Pauma brought suit to rescind the 2004 Amendment, and the U.S. District Court for the Southern District of California granted that request in 2013. (FAC ¶¶ 84–90.) *See also Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. California*, No. 09-cv-1955-CAB-MDD, 2013 WL 12120442, at *17 (S.D. Cal. Mar. 18, 2013) (Bencivengo, J.). The Ninth Circuit affirmed. *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1173 (9th Cir. 2015).

On November 14, 2014, Pauma made requests to commence renegotiations with the State pursuant to Section 12.2 of the 1999 Pauma Compact following rescission of the 2004 Amendment. (FAC ¶ 111, Ex. 2.) Between January 16, 2015, and March 30, 2016, representatives for Pauma and the State held three in-person meetings and exchanged seventeen letters. (*Id.* ¶¶ 106–52, Exs. 7–23.) As a result of these exchanges, the State presented Pauma with a "complete draft [compact]" on April 28, 2016. (*Id.* ¶ 152.) Pauma alleges that the complete draft compact contains nearly identical gaming rights and a substantial increase in revenue sharing requirements, but no new State concessions of meaningful value. (*Id.* ¶¶ 159–80.)

### C. Use of Special Distribution Fund Resources

Meanwhile, during a review of the 1999 Compacts in 2015, three signatory tribes made a request for information regarding the State's appropriation of moneys paid by the tribes into a Special Distribution Fund ("SDF"). (FAC ¶ 186.) Under Section 5.1(a) of the 1999 Compacts, tribes operating gaming devices as of September 1, 1999, are required each quarter to pay into the SDF a percentage of the average wins of those devices. (1999 Pauma Compact § 5.1(a).) The SDF funds are then available for appropriation by the California legislature for a number of purposes spelled out in Section 5.2—namely, to cover the regulatory and administrative costs of implementing and administering the Compacts, as well as to provide funding for programs designed to address gambling addiction. (*Id.*) In response to the requests for information from the signatory tribes, the State, on November 12, 2015, disclosed that SDF moneys were funding the California Department of Justice's litigation efforts with regards to the 1999 Compacts. (FAC ¶¶ 186–87.) Shortly thereafter, counsel for Pauma submitted a California Public Records Act request with the State of California, Office of the Attorney General, asking for documents related to the appropriation and use of SDF funds by the State. (*Id.* ¶ 190.) The Office of the Attorney General produced documents showing annual expenditures for the SDF for fiscal years 2009–2010 to 2014–2015. (*Id.* ¶ 191.)

Pauma now alleges that, based on the records disclosed by California's Office of the Attorney General, the State has been misusing SDF funds in violation of Section 5.2 of the 1999 Pauma Compact. (FAC ¶ 192.) Pauma contends that the State's use of SDF moneys has resulted in the prolonged and costly litigation of compact suits and has discouraged the State from appropriately settling these matters. (*Id.* ¶¶ 301–02.) Further, Pauma claims that the use of SDF funds for litigation has resulted in a shortfall of SDF funds that would otherwise have gone to local communities or be used for regulatory purposes. (*Id.* ¶ 302.) As a result, Pauma alleges it was forced to execute a memorandum of understanding with the State

...

under the now rescinded 2004 Amendment, which obligated Pauma to cover the regulatory costs that the State had not been paying. (*Id.* ¶ 78.) Pauma claims it anticipates having to do so again under any future compact with the State should Pauma ever decide to expand its gaming operations. (*Id.* ¶ 302.)

Based on the foregoing, Pauma brings claims against (1) the State and Governor Brown for negotiating in bad faith under the IGRA, and (2) the State, Governor Brown, the CGCC, and the State of California Department of Justice, Office of the Attorney General for breach of the 1999 Pauma Compact. (FAC ¶¶ 198–303.)

## II. <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the legal sufficiency" of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III. DISCUSSION

Defendants move to dismiss the twenty-first claim of the First Amended Complaint, which alleges a breach of the 1999 Pauma Compact through the misuse of SDF funds. Defendants argue for dismissal of this claim on three bases. First, Defendants argue that Pauma does not have standing to bring the claim because it has failed to satisfy prudential standing requirements. (Mot. 4:14–5:2, ECF No. 19.) Second, they argue Pauma's twenty-first claim is time-barred by the applicable statute of limitations. (*Id.* 7:7–8.) Third, Defendants argue Pauma has failed to state a claim against the CGCC and the California Department of Justice because these two Defendants are not parties to the 1999 Pauma Compact. (*Id.* 8:8–13.) The Court addresses each of these three arguments in turn.

### A. Standing

Article III, section 2 of the U.S. Constitution restricts the power of the federal judiciary to the resolution of "Cases" and "Controversies." *Sprint Commc'ns Co., v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). The requirement of a case-or-controversy is satisfied where the plaintiff has standing to bring suit. *Id.* For a plaintiff to have standing, the plaintiff must meet the constitutional minimum of (1) an injury in fact, (2) a causal connection between the injury and the challenged action

of the defendant, and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Outside of Article III, courts have imposed a number of prudential standing requirements that act as self-imposed limits on the exercise of their jurisdiction. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499–500 (1975). First is the requirement that plaintiffs assert and rely on their own rights and interests, rather than the legal rights and interests of third parties. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 474 (1982). Second, plaintiffs must assert more than a generalized grievance of wide public significance. *Id.* at 474–75.

### 1.     Asserting a Party's Own Legal Interest

Federal courts generally will not allow a plaintiff to assert the rights and interests of absent third parties. *Warth*, 422 U.S. at 499. This limitation serves as a restriction on the court's authority, requiring that a litigant assert his or her own legal rights and interests rather than rest a claim to relief on the legal rights or interests of others. *Mills v. United States*, 742 F.3d 400, 406–07 (9th Cir. 2014).

Defendants contend that Pauma is relying on the contract rights of third parties, as opposed to the tribe's own rights, because the 1999 Pauma Compact does not require that the tribe make—nor does Pauma allege that it has made—any payments into the SDF. (Mot. 3:17–28.) Section 5.1(a) of the 1999 Pauma Compact requires Pauma to make quarterly contributions to the SDF only with respect to the number of gaming devices operated by Pauma as of September 1, 1999. (1999 Pauma Compact § 5.1(a).) Pauma did not put any gaming devices into operation until May 2001; thus, it was not required to make any payments into the SDF. (FAC ¶ 63.) Under Defendants' theory, Pauma has no direct interest in the spending of SDF monies because Pauma never paid into the SDF, and Pauma must therefore rely on the interests of third party tribes that did pay into the SDF in order to pursue relief. (Mot. 5:4–9.)

The Court disagrees. Pauma asserts its own legal interest; namely, an interest in whether the moneys of the SDF are spent in accordance with the terms of the 1999 Pauma Compact. As a party to the 1999 Pauma Compact with the State, the tribe has a right to enforce its terms. Under Section 5.2 of the 1999 Pauma Compact, the SDF monies are available for:

> (a) grants, including any administrative costs, for programs designed to address gambling addiction; (b) grants, including any administrative costs, for the support of state and local government agencies impacted by tribal government gaming; (c) compensation for regulatory costs incurred by the State Gaming Agency and the Department of Justice in connection with the implementation and administration of the Compact; (d) payment of shortfalls that may occur in the Revenue Sharing Trust Fund; and (e) any other purposes specified by the Legislature.

(1999 Pauma Compact § 5.2.) Pauma alleges that it has suffered, and will continue to suffer, harms directly related to a breach of Section 5.2; that is, the use of SDF funds for the negotiation of tribal compacts as well as the litigation of bad faith claims against the State. (FAC ¶ 302.) That Pauma made no payments into the SDF is of no consequence to whether Pauma has a legal interest in ensuring the State abides by the terms of the 1999 Pauma Compact that the tribe is a party to. If the State was interested in limiting the number of tribes that could bring suit against it for potential misappropriation of SDF funds, it could have negotiated to remove Section 5.2 from the compacts with tribes like Pauma who were not required to pay into the SDF. Because the State did not do so, it is bound by the terms of the 1999 Pauma Compact that it voluntarily chose to enter into.

Accordingly, because Pauma is seeking to enforce a provision in a contract that the tribe is a party to, the Court concludes Pauma is asserting its own legal interest, as opposed to resting its claim on the legal rights of third parties. *See Mills*, 742 F.3d at 406.

//

//

### 2. Asserting More than a Generalized Grievance

Asserted harms that amount to no more than generalized grievances shared by a large class of citizens do not warrant the exercise of jurisdiction. *Warth*, 422 U.S. at 499. Generalized grievances present injuries that are not particularized or actual, and suits alleging them fail for lack of standing. *Novak v. United States*, 795 F.3d 1012, 1018 (9th Cir. 2015). For a harm to amount to a generalized grievance it must not only be widely shared, but also be of an abstract and indefinite nature. *Id.*

Here, Defendants assert that the only harm Pauma has suffered is a generalized grievance over how the California legislature appropriates SDF monies. (Mot. 6:15–20.) The Court is not persuaded. Pauma's claim is grounded in harms resulting from an alleged breach of Section 5.2 of the 1999 Pauma Compact. Specifically, because the State was allegedly able to fund its litigation of compact suits with SDF moneys, litigation between the State and Pauma was prolonged at Pauma's expense. Further, because of the misappropriation of SDF funds, Pauma alleges it was previously forced, and may be forced again in the future, to execute a memorandum of understanding with the State in order to make up the difference in missing SDF moneys. The harm here is a particularized injury because it relates directly to Pauma, a party to the compact that Defendants allegedly breached. The harm itself is also actual; Pauma asserts it has been harmed, and that it will continue to be harmed, as a result of the breach. It may be the case that certain classes of citizens beyond Pauma also share this harm, such as other signatory tribes or even individual members of the tribes. However, simply because a class of citizens apart from Pauma may have also suffered as the result of a misappropriation of SDF funds does not mean that a breach of the 1999 Pauma Compact amounts to no more than a generalized grievance that is insufficient to confer standing to Pauma.

Accordingly, because Pauma is asserting a particularized harm specific to the tribe, the Court concludes that Pauma is not asserting a generalized grievance. *See Novak*, 795 F.3d at 1018. The Court therefore rejects Defendants' first ground for

dismissal and finds that Pauma has satisfied the prudential requirements such that it has standing to bring the twenty-first claim of the First Amended Complaint.

### B. Statute of Limitations

A cause of action created by a federal statute will be governed by the statute of limitations expressly supplied by the federal statute. *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414 (2005). The IGRA, however, does not expressly provide a statute of limitations period. *See* 25 U.S.C. § 2710(d)(7). When a federal statute does not expressly supply a statute of limitations period, state statutes of limitations generally govern actions in federal courts. *See Papa v. United States*, 281 F.3d 1004, 1011–12 (9th Cir. 2002). Here, California provides a four-year statute of limitations period for breach of contract claims under section 337 of the California Code of Civil Procedure. Thus, a four-year limitations period applies to Pauma's breach of compact claim. *See id.* at 1011–12.

Although state law provides the limitations period here, the law of the jurisdiction creating the cause of action determines when the action accrues. *Archer v. Airline Pilots Ass'n Intern.*, 609 F.2d 934, 937 (9th Cir. 1979). Therefore, federal law determines when the statute of limitations began to run on Pauma's claim. *See id.* Further, general principles of federal contract law govern the gaming compacts, and the Ninth Circuit often looks to the Restatement when deciding questions of federal common law. *Pauma*, 813 F.3d at 1163. The court "may also rely on California contract law [when] there is no practical difference between state and federal law in [the] area." *Id*.

Defendants argue that the twenty-first claim of the First Amended Complaint is, on its face, time barred by the four-year statute of limitations because Pauma alleges the breach first occurred over a decade ago. (FAC ¶¶ 188–89.) In response, Pauma advances two arguments. First, Pauma argues that accrual of its claim was delayed under the discovery rule. (Opp'n 18:11–14, ECF No. 22.) Second, Pauma

argues that Defendants' actions constitute multiple breaches of the 1999 Pauma Compact, and that these breaches have continuously accrued, which allows Pauma to recover for those breaches falling within the limitations period. (*Id.* 18:15–17.) The Court addresses each argument in turn.

### 1. Discovery Rule

The underlying purpose of statutes of limitations is fairness, and fairness may require that the statutory bar not be strictly applied under certain circumstances. *Mont. Pole & Treating Plant v. I.F. Laucks and Co.*, 993 F.2d 676, 678 (9th Cir. 1993). These circumstances include instances when the plaintiff has no knowledge of the facts essential to the cause of action. *Id.* at 678. "Under federal law [accrual begins] when the plaintiff knows or has reason to know of the injury that is the basis of the action." *N. Cal. Retail Clerks Unions & Food Emp'rs Joint Pension Tr. Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990); *see also Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998) (holding that under the general federal rule, the limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action). However, "a plaintiff who did not actually know of his claim will be barred 'if he should have known [of it] in the exercise of due diligence.' " *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) (alteration in original) (quoting *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999)).

Pauma's twenty-first claim contends that the State has been misusing SDF moneys to fund the defense of bad-faith-negotiation and breach-of-compact suits for over a decade. (FAC ¶¶ 188–89.) On its face, this claim is time-barred by the four-year statute of limitations. Pauma asserts, however, that under the discovery rule the earliest accrual date is on or about November 12, 2015, when the State first disclosed how it was using SDF funds and when Pauma first became aware of the potential breach. (Opp'n 18:11–14.)

1  The Court is not convinced. Under the discovery rule, parties to a contract are required to exercise reasonable due diligence in investigating potential breaches. *See O'Connor*, 311 F.3d at 1147; *see also Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 7 (2003) (noting where the plaintiff relied on the delayed discovery rule, the plaintiff had the burden to demonstrate he exercised "due diligence in discovering the breach of" the contractual obligation at issue). Pauma has failed to show that it engaged in the kind of due diligence necessary to assert delayed discovery. First, Pauma appears from its complaint to have failed to engage in any reasonable due diligence after it was required to enter into a memorandum of understanding with the State under the 2004 Amendment to cover funding shortfalls—a harm that Pauma claims was the direct result of a misuse of SDF funds. Second, when Pauma did take action to ascertain whether the State was abiding by the terms of Section 5.2 of the 1999 Pauma Compact, it did so over ten years after it concluded the 2004 Amendment. Further, Pauma only took action after other signatory tribes had inquired about the use of SDF funds, which prompted a disclosure by the State. Pauma's California Public Records Act request, by itself, does not satisfy Pauma's reasonable due diligence obligations reaching back to the time when the breach first allegedly occurred. Moreover, the First Amended Complaint describes no other acts of due diligence on the part of Pauma despite the tribe alleging that the misuse of SDF funds has been occurring since at least 2004.

Accordingly, because Pauma fails to plausibly plead that it has exercised reasonable due diligence in discovering Defendants' breach, Pauma cannot invoke the discovery rule to delay the accrual of its claim. Therefore, Pauma's twenty-first claim is time-barred unless the tribe can proceed under a different theory, such as continuous accrual.

//
//
//

### 2. Continuous Accrual

"A contract that creates continuing obligations 'is capable of a series of partial breaches or a single total breach by repudiation.'" *Minidoka Irrigation Dist. v. Dep't of Interior of U.S.*, 406 F.3d 567, 572–73 (9th Cir. 2005) (alteration omitted) (quoting *Trs. for Alaska Laborers–Constr. Ind. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 517 (9th Cir. 1987)). "Absent a repudiation of a contract that requires continuing performance, the plaintiff may only sue for partial breaches as they occur, and the statute of limitations does not begin to run against a subsequent failure to perform until it occurs." *Trs. for Alaska Laborers–Constr.*, 812 F.2d at 517. California similarly applies the rule of continuous accrual as an application of the doctrine of contractual severability, where breaches of a contract's severable parts give rise to separate causes of action. *Armstrong Petroleum Corp. v. Tri-Valley & Gas Co.*, 116 Cal. App. 4th 1375, 1388–89 (2004). When the doctrine applies, continuous accrual only supports recovery for damages arising from breaches that fall within the most recent statutory period. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1199 (2013).

Here, Section 5.1 of the 1999 Compacts requires signatory tribes to pay into the SDF each quarter following the second anniversary date of the effective date of the agreement. (1999 Compact § 5.1(a).) Section 5.2 allows the SDF funds, which are deposited on a continuing basis, to be appropriated by the legislature and spent in accordance with those purposes spelled out in Section 5.2. (*Id.*) The Compact thus creates a recurring or continuing obligation both on the part of the signatory tribes paying into the SDF, and on the part of the State in its use of those funds. Each quarterly appropriation of SDF funds by the State, were they to constitute a breach of Section 5.2, would constitute a new breach giving rise to a separate cause of action.

Accordingly, the doctrine of continuous accrual applies to the twenty-first claim of the First Amended Complaint, and Pauma is entitled to pursue recovery for those alleged breaches of Section 5.2 that occurred within the four-year statutory

period. The Court therefore rejects Defendants' second argument for dismissal of Pauma's breach of compact claim.

### C. Parties to the Compact

The elements of a breach of contract claim under federal common law are: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

Pauma names the CGCC and the California Department of Justice as parties to the twenty-first claim under a theory that both are parties to the 1999 Pauma Compact as authorized officials or agents of the State. (Opp'n 20:11–21.) The opening paragraph to the 1999 Pauma Compact states that the Compact is an agreement between Pauma and the State of California, while Section 2.17 defines "State" as the "State of California or an authorized official or agency thereof." (1999 Pauma Compact pmbl., § 2.17.) Pauma asserts that the CGCC, in its responsibility for administering the SDF, and the California Department of Justice, in its receipt of SDF funds to represent the State in litigation, are properly named defendants as agents of the State. (Opp'n 20:22–26.)

Accepting arguendo that the CGCC and the California Department of Justice are themselves agents of the State for the purposes of the 1999 Pauma Compact, Pauma must still assert that they breached the terms of the agreement. In other words, there must be a separate and complete cause of action against each of these Defendants. Section 5.2 of the Compact states that the SDF funds are available for appropriation by the legislature for particular uses. Although the CGCC and the California Department of Justice may have benefitted from the appropriation of SDF moneys, Pauma does not plausibly allege that they themselves breached the terms of the 1999 Pauma Compact. The complaint makes no allegation that the CGCC or the California Department of Justice had any control over the appropriation of SDF

funds. Pauma has therefore failed to show in the First Amended Complaint how the CGCC or the California Department of Justice's actions breached an obligation under the 1999 Pauma Compact.

Accordingly, Pauma has failed to state a claim for relief against the CGCC and the California Department of Justice, and the Court will dismiss Pauma's twenty-first claim against them. The Court grants Pauma leave to amend its pleading because Pauma may be able to add allegations demonstrating that the actions of the CGCC and the California Department of Justice have in some way breached an obligation under the 1999 Pauma Compact. *See* Fed. R. Civ. P. 15(a); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 969 (N.D. Cal. 2016) ("Generally, leave to amend shall be denied only if allowing amendment would . . . be futile[.]").

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss Pauma's twenty-first claim. Specifically, the Court grants Defendants' request to dismiss the CGCC and the California Department of Justice from Pauma's twenty-first claim because Pauma fails to state a claim against these Defendants. In addition, the Court denies Defendants' request to dismiss Pauma's claim against the remaining Defendants under the prudential standing requirements and on statute of limitations grounds. If Pauma chooses to file a Second Amended Complaint, it must be filed no later than **April 19, 2017**.

IT IS SO ORDERED.

DATED: March 29, 2017

Hon. Cynthia Bashant
United States District Judge